USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-9-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TWELVE SIXTY LLC, ARON MARDEROSIAN,
and ROBERT MARDEROSIAN,

          *Plaintiffs*,

         - against -

EXTREME MUSIC LIBRARY LIMITED, a
division of Sony/ATV Music Publishing;
EXTREME MUSIC LIMITED; VIACOM
INTERNATIONAL INC.; NEW CREATIVE MIX
INC.; and HYPE PRODUCTION MUSIC

         *Defendants*.
------------------------------------------------------------X

17-cv-1479 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Twelve Sixty LLC, Aron Marderosian, and Robert Marderosian ("Plaintiffs") bring this action against Extreme Music Library Ltd. and Extreme Music Ltd. ("Extreme Defendants") and Viacom International Inc. and New Creative Mix Inc. ("Viacom Defendants"), seeking royalties and licensing fees allegedly owed under the terms of a composer agreement. The Extreme and Viacom Defendants each move for an order limiting Plaintiffs' recoverable damages in their breach-of-contract claims and dismissing the remaining claims. For the following reasons, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

Aron and Robert Marderosian, professionally known as "Heavy Young Heathens," have written and recorded hundreds of musical compositions used in television shows, movies, theatrical trailers, and video games. First Am. Compl. ("FAC") ¶ 1. On May 19, 2010, the Marderosians, acting through their company Twelve Sixty LLC, entered into a blanket composer agreement ("2010 Agreement") with New Remote Productions Inc. ("New Remote"), a Viacom

subsidiary. FAC Ex. 1 at pp. 1, 12. The 2010 Agreement provided that Twelve Sixty LLC would deliver fifty songs to New Remote in exchange for a flat fee of $10,000 and one-hundred percent of the "writer's share" of public performance royalties payable by performing rights organizations. *Id.* at pp. 3–4, 14, 16.

On March 7, 2011, New Remote transferred all of its rights and obligations under the 2010 Agreement to another Viacom subsidiary, New Creative Mix Inc. ("New Creative"), and Plaintiffs entered into a new composer agreement ("2011 Agreement") with New Creative. FAC Ex. 3 at pp. 2–6. The 2011 Agreement provided that Plaintiffs would produce an additional thirty-five songs for New Creative in exchange for $20,000 and one-hundred percent of the writer's share of public performance royalties. *Id.* ¶¶ 7.1, 7.4, Schedule A. The 2011 Agreement further obligated New Creative to register the songs with the appropriate performing rights organizations, which are responsible for collecting and distributing performance royalties. *Id.* ¶ 4.8. New Creative also had the right to exploit the Plaintiffs' songs as part of the Hype Music Library, a premium production music library jointly owned by Viacom and Extreme, which could be accessed by third-party licensees in return for a license fee. *Id.* ¶¶ 5.1, 1.5. If Plaintiffs' songs were exploited as part of the Hype Music Library, Plaintiffs were entitled to receive additional compensation in the form of fifty percent of "Gross Receipts," defined as income actually received by Extreme or New Creative from licensing songs in the Hype Music Library. *Id.* ¶¶ 7.2, 1.4, 1.6, 12.

The 2011 Agreement required New Creative or its assignees to issue biannual accounting statements to Plaintiffs and include payment of Plaintiffs' share of any Gross Receipts. *Id.* ¶ 8.1. It contained a contractual limitations period provision that required Plaintiffs to commence any action concerning an accounting statement within two years after the statement was rendered.

This is the sole remedy provision, and it provides that the scope of any such action "shall be limited to a determination of the amount of [Plaintiffs'] share of Gross Receipts, if any, payable for the accounting periods in question, and [Plaintiffs'] sole remedy shall be the recovery thereof." *Id.* ¶ 8.2. It further provided that "[a]ll disputes arising under this Agreement shall be governed by the laws of the State of New York, and each of the parties submits to the exclusive jurisdiction of the federal and state courts of the State of New York." *Id.* ¶ 10.8.

On September 27, 2016, Plaintiffs filed suit against the Extreme Defendants in the Central District of California. ECF 1. On February 22, 2017, the Central District of California transferred the case to this court, citing the choice-of-law and forum-selection clauses. ECF 26. On March 28, 2017, Plaintiffs filed the First Amended Complaint ("FAC"), which added the Viacom Defendants and Hype Production Music ("Hype") as parties. ECF 49.

The FAC alleges that Defendants engaged in a fraudulent scheme to actively conceal thousands of exploitations of Plaintiffs' music, allowing Defendants to make millions of dollars without paying Plaintiffs what they were entitled to under the 2011 Agreement. FAC ¶¶ 45–46, 54. Specifically, it alleges that the Defendants purposefully failed to register Plaintiffs' songs with a performing rights society so that third parties would not have to pay Plaintiffs a writer's share of public performance royalties, thus enticing more third parties to do business with Defendants. *Id.* ¶¶ 57–58. It further alleges that Extreme, rather than Viacom, issued the accounting statements, which were sporadic and materially omitted the majority of exploitations, and that Extreme frequently offered Plaintiffs' music to third parties in exchange for "consulting fees" instead of licensing fees so that Defendants would not have to pay Plaintiffs a percentage of the fees. *Id.* ¶¶ 54, 55, 70. As a result, Plaintiffs raise claims for breach of contract, breach of implied-in-fact contract, fraud, rescission, and accounting. *Id.* ¶¶ 79–148.

3

Extreme Defendants and Viacom Defendants now move under Federal Rules of Civil Procedure 9(b), 12(b)(6) and 12(f) to: (1) partially dismiss Plaintiffs' two claims for breach of contract to the extent they seek damages beyond those permitted by the 2011 Agreement; (2) dismiss Plaintiffs' claims for fraud, breach of implied-in-fact contract, rescission, and accounting, as well as a purported claim for breach of the duty of good faith and fair dealing; (3) strike Plaintiffs' demands for punitive damages and disgorgement of profits; and (4) dismiss "Hype Music Production" from this action because it is not a legal entity capable of being sued.

## DISCUSSION

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must have sufficient "factual plausibility" to allow the court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In ruling on a Rule 12(b)(6) motion, a court may consider both "the allegations on the face of the complaint" as well as "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### A. Breach of Contract

Plaintiffs raise two separate breach-of-contract claims: one against New Creative and MTV Networks as an alter ego of New Creative; and one against Extreme, MTV Networks, and Hype as assignees of New Creative's obligations under the 2011 Agreement. FAC at pp. 35, 39. Each of these claims alleges, *inter alia*, two separate breaches of the 2011 Agreement: (1) a failure to register the songs with performing rights organizations, so that Plaintiffs could receive the writer's share of public performance royalties, and (2) a failure to license the songs and pay

4

Plaintiffs fifty percent of the income generated from the licensing fees. *Id.* ¶¶ 81–83, 85–86, 96. Without differentiating between the two alleged breaches, Defendants argue that Plaintiffs' recoverable damages for their breach-of-contract claims should be limited to their share of licensing fees earned on or after July 1, 2014, due to the sole remedy and contractual limitations period provisions in the 2011 Agreement. Indeed, such clauses are enforceable under New York law. *See Deutsch Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 498 n.6 (S.D.N.Y. 2013) ("New York courts have respected 'sole remedy' provisions as limiting liability for breaches of contract."); *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 606–07 (S.D.N.Y. 2008) ("Courts applying New York law have routinely upheld the enforceability of contractual limitation periods . . . .").

The Court notes, however, that these provisions apply only to actions "concerning royalty accountings rendered or required to be rendered by [Defendants] hereunder." FAC Ex. 3 ¶ 8.2. These royalty accountings pertain only to royalties due from licensing fees, not from public performances. *See id.* ¶¶ 8.1, 8.2, 8.3, 1.4. Under the 2011 Agreement, the writers' share royalties for public performances are not paid by Defendants; rather, they are paid by third parties to performing rights organizations which then pay the composers directly. *See* FAC ¶ 33. This distinguishes this case from others in which defendants were obligated to pay all royalties directly to plaintiffs and courts thus applied similar provisions to plaintiffs' entire breach-of-contract claims. *See Toto, Inc. v. Sony Music Entm't*, No. 12-cv-1434, 2012 WL 6136365, at *2, 7, 13 (S.D.N.Y. Dec. 11, 2012); *Allman*, 530 F. Supp. 2d at 604, 607. The sole remedy and contractual limitations provisions in the 2011 Agreement to apply only to the alleged breaches regarding licensing fees. They do not apply to the alleged breaches regarding the writers' share of public performance royalties. Indeed, a contrary interpretation would allow Defendants to

breach their separate obligation to register the songs with impunity and with no adequate remedy for Plaintiffs. Accordingly, Plaintiffs may continue to seek damages stemming from lost public performance royalties without regard to the contractual limitations period or sole remedy provisions.

As to the second alleged breach—the failure to pay Plaintiffs their share of income generated from licensing fees—Plaintiffs first contend that neither Viacom nor Extreme can enforce the terms of the provisions because neither Viacom nor Extreme are parties to the 2011 Agreement. Plaintiffs' breach of contract claims against these defendants cannot succeed, however, unless they are parties to the contract. *See Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 303 (S.D.N.Y. 2011). Thus, the Court rejects this contradictory argument.

Plaintiffs also contend that the contractual temporal limitations period provision should not be enforced under the doctrine of equitable estoppel. This doctrine allows a plaintiff to "equitably estop a defendant from asserting a time limitation defense." *Allman*, 530 F. Supp. 2d at 608. It only applies, however, "in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit," such as "cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Id.* (quotations omitted). Moreover, "the misrepresentation or concealment supporting an estoppel argument must be distinct from the underlying claim." *Axiom Inv. Advisors, LLC ex rel. Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 539 (S.D.N.Y. 2017) (citation omitted).

Equitable estoppel cannot apply here, because the alleged misrepresentations and concealments are not distinct from the underlying claim. Plaintiffs primarily argue that equitable

6

estoppel should apply because Defendants changed the names of the songs, changed ISWC numbers, falsely told Plaintiffs that they submitted registrations, and re-registered the songs. Pls.' Resp., ECF 80 at pp. 23–24. These allegations, however, all relate to the alleged breach causing lost public performance royalties, not the lost licensing fee royalties breach. The only alleged misrepresentation regarding the licensing fees is that Defendants "issued statements which materially omitted the vast majority of exploitations of PLAINTIFFS' music." FAC ¶ 55. As the FAC notes, these allegedly misleading statements were part of the "direct breach" of the 2011 Agreement which resulted in Plaintiffs not receiving licensing fee royalties owed to them. FAC ¶ 88. Accordingly, equitable estoppel does not apply, and the damages that Plaintiffs seek for lost royalties from licensing fees will be limited to those fees earned on or after July 1, 2014.

### B. Fraud

Plaintiffs' fraud claim alleges that: (1) they were "fraudulently induced" to enter into the 2011 Agreement based on pre-contract representations that they "would receive" the licensing fees and performance royalties memorialized in the agreement, FAC ¶¶ 46–50; (2) Defendants "fraudulently exploited" the works in a manner that deprived Plaintiffs of the full amount of licensing fees and performance royalties to which they claim they were entitled under the 2011 Agreement, *id.* ¶¶ 44, 73–75; and (3) Defendants "fraudulently concealed" the full extent of licensing fees and performance royalties to which Plaintiffs claim they were contractually entitled, *id.* ¶¶ 54, 59, 70–72, 120. Defendants argue that this fraud claim should be dismissed because it is based on the same allegations as Plaintiffs' breach-of-contract claims and is therefore redundant.

Indeed, "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the

precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (citation omitted). "[U]nder New York law, parallel fraud and contract claims may be brought only if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007). Plaintiffs' allegations do not satisfy any of these three exceptions.

First, no legal duty exists between Plaintiffs and Defendants, separate from the duty to perform under the 2011 Agreement. Under New York law, "[i]n the absence of special circumstances, no fiduciary relationship exists between a music publisher and composers as a matter of law." *Carter v. Goodman Group Music Publishers*, 848 F. Supp. 438, 445 (S.D.N.Y. 1994). Moreover, "the fact that a party is responsible for collecting and passing on royalties does not create a fiduciary relationship." *Wilson v. Dynatone Publ'g Co.*, 16-cv-104, 2017 WL 1330336, at *7 (S.D.N.Y. Apr. 10, 2017). Plaintiffs rely on *Apple Records, Inc. v. Capital Records, Inc.* for the proposition that a fraud claim is not duplicative of a breach-of-contract claim, where the fraud claim is "premised on defendants' improper disposition of [plaintiffs'] recordings and their fraudulent concealment and misrepresentation of those transactions through the rendering of false statements and accountings." 137 A.D. 2d 50, 56 (N.Y. App. Div. 1st Dep't 1988). But *Apple* is limited by its extraordinary facts: the parties' business relationship lasted more than twenty years, and plaintiffs' work accounted for 25% to 30% of defendant's business. *Id.* at 57. Hence, the court concluded that "from such a long enduring relation was born a special relationship of trust and confidence, one which existed independent of the

8

contractual duties." *Id.* No such special relationship is alleged here, and no independent legal duty exists.

Second, the alleged fraudulent statements are not collateral or extraneous to the contract. Representations that Plaintiffs "would receive" licensing fees do not support a fraudulent inducement theory because "[o]nly a misrepresentation regarding a present fact may give rise to a claim for fraudulent inducement separate and apart from a breach of contract claim." *C3 Media & Mktg. Grp., LLC v. FirstGate Internet, Inc.*, 419 F. Supp. 2d 419, 431 (S.D.N.Y. 2005). Plaintiffs' fraudulent exploitation theory also is not based on statements that are extraneous or collateral; it is based on obligations squarely addressed in the 2011 Agreement. *See* FAC ¶¶ 44, 73–75. And Plaintiffs' fraudulent concealment theory also fails, as "intentionally false statements offered to conceal a breach of contract do not give rise to an action for fraud." *Margel v. E.G.L. Gem Lab Ltd.*, 04-cv-1514, 2010 WL 445192, at *6 (S.D.N.Y. Feb. 8, 2010). Thus, this is the identical breach-of-contract claim, recast as fraud.

Third, Plaintiffs do not seek special damages attributable to fraud that are distinct from the damages stemming from the alleged breaches of the 2011 Agreement. Plaintiffs argue that they have suffered damages not available in their breach-of-contract claim because the writer's share royalties would not have been paid by Defendants under the 2011 Agreement, but rather by performing rights organizations. Such damages, however, are recoverable in their breach-of-contract claim because contract damages are not dependent on whether the breaching party bears a payment obligation under the contract; rather, contract damages are intended to place "the aggrieved party in the same economic position it would have been if both parties performed." *Bausch & Lomb v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992). In contrast, to maintain a fraud claim, "[a] demonstration of benefit-of-the-bargain damages is not enough—the plaintiff must

have suffered out of pocket pecuniary losses as a result of reliance on the alleged misrepresentation." *Bibeault v. Advanced Health Corp.*, No. 97-cv-6026, 1999 WL 301691, at *9 (S.D.N.Y. May 12, 1999) (citation omitted). This, Plaintiffs fail to allege. Accordingly, the fraud claim is dismissed.

### C. Breach of Implied-in-fact Contract

Defendants next argue that Plaintiffs' claim for breach of an implied-in-fact contract should be dismissed as duplicative of the breach-of-contract claims. In general, a plaintiff may plead breaches of express and implied-in-fact contracts in the alternative. *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 355 (S.D.N.Y. 2012). Nevertheless, under New York law, "a contract cannot be implied in fact where there is an express contract governing the subject matter involved." *See Julien J. Studley, Inc. v. New York News, Inc.*, 512 N.E.2d 300, 301 (N.Y. 1987). Such a claim cannot proceed "even if one of the [defendants] is not a party to that contract." *Vista Food Exchange, Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 312 (S.D.N.Y. 2015). Hence, courts regularly dismiss implied-in-fact contract claims where an express contract governs the same subject matter as the purported implied contract. *See, e.g.*, *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 455 (S.D.N.Y. 2014); *Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 413–14 (S.D.N.Y. 2011).

Here, the purported implied contract is identical to the 2011 Agreement. *See* FAC ¶¶ 104–05. Moreover, the Extreme Defendants expressly concede that they are bound by the 2011 Agreement. *See* Extreme Def.'s Reply Mem., ECF 83 at 3. Accordingly, the implied-in-fact contract claim is dismissed.

### D. Rescission

Defendants contend that Plaintiffs' claim for rescission of the 2011 Agreement should be dismissed because Plaintiffs concede that they have received at least some royalty payments, *see* FAC at ¶¶ 8, 44, 49, and because money damages are an adequate remedy for the alleged breach. "In order to justify the remedy of rescission, a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) (quotation omitted). In addition, "[r]escission is an equitable remedy, which is to be invoked only when there is lacking a complete and adequate remedy at law and where the status quo may be substantially restored. Where damages appear adequate and it is impracticable to restore the status quo, rescission is inappropriate." *New Shows, S.A. de C.V. v. Don King Prods., Inc.*, 2000 WL 354214, at *2 (2d Cir. Apr. 6, 2000) (quotations and alterations omitted).

Plaintiffs contend that rescission is appropriate because "the conduct of Defendants was so material, willful, and substantial that it completely defeated the object of the parties in making the contract." ECF 80 at 29. Even if Plaintiffs are correct, however, there is no reason why money damages would not be an adequate remedy in this case. This alone precludes their claim for rescission. *See New Paradigm*, 107 F. Supp. 2d at 329–30 (dismissing claim for rescission of royalties contract because "Plaintiff has asserted no reason why damages would not be an adequate remedy"); *see also Robinson v. Sanctuary Record Grps., Ltd.*, 826 F. Supp. 2d 570, 576 (S.D.N.Y. 2011) (holding that an "alleged partial non-payment of royalties would be more appropriately remedied by a legal, rather than equitable remedy"). Accordingly, the claim for rescission is dismissed.

### E. Accounting

Defendants next argue that Plaintiffs' accounting claim should also be dismissed as duplicative of the breach-of-contract claim. Indeed, "[a]n equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter . . . because a plaintiff would be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law." *Najjar Grp., LLC v. West 56th Hotel LLC*, No. 14-cv-7120, 2017 WL 819487, at *3 (S.D.N.Y. Mar. 1, 2017). Here, the accounting and contract claims cover the same subject matter, as Plaintiffs seek an accounting merely to determine "the full and precise amount owed" under the 2011 Agreement. *See* FAC ¶ 147. Since Plaintiffs may obtain this information through discovery on the contract claim, the accounting claim is dismissed.

### F. Good Faith and Fair Dealing

Defendants contend that Plaintiffs have embedded a separate claim for breach of the implied duty of good faith and fair dealing within their breach-of-contract claims in an attempt to evade the contractual limitations period, and they argue that this claim should be dismissed as duplicative of the contract claims. *See* FAC ¶¶ 89–90, 97–98. "Indeed, New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pleaded." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451–52 (S.D.N.Y. 2014). Plaintiffs, however, have not pleaded a separate cause of action. Rather, they allege a breach of the duty of good faith and fair dealing as part of their general breach-of-contract claim, as is proper under New York law. *See id.* at 452 ("Instead, an alleged breach of the implied covenant of good faith and fair dealing is part of a general breach of contract claim." (citation omitted)). Accordingly, the

Court finds no cause of action to dismiss, and Plaintiffs may argue a breach of the duty of good faith and fair dealing as part of their breach-of-contract claim, but they may not recover damages for licensing fees earned before July 1, 2014, as explained above.

### G. Punitive Damages and Disgorgement of Profits

Defendants next argue that Plaintiffs' demands for punitive damages and disgorgement of profits as potential remedies should be stricken under Rule 12(f). Indeed, "disgorgement of profits is unavailable under New York contract law," *Pot Luck, LLC v. Freeman*, No. 06-cv-10195, 2010 WL 908475, at *2 (S.D.N.Y. Mar. 8, 2010), as Plaintiffs now concede. Thus, the Court strikes the demand for disgorgement of profits.

In addition, under New York law, punitive damages are recoverable for a breach of contract only "when the breach also involved a particularly egregious fraud that was aimed at the public generally." *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 94 (2d Cir. 2005) (citation and quotation omitted). Thus, to survive a motion to strike, a plaintiff "must allege facts that not only evince sufficient moral culpability, but that also constitute a public wrong." *Ventus Networks, LLC v. Answerthink, Inc.*, No. 05-cv-10316, 2007 WL 582736, at *3–4 (S.D.N.Y. Feb. 22, 2007). Here, Plaintiffs fail to satisfy the public harm requirement because they do not allege the existence of other victims. *See id.* at *4 (striking demand for punitive damages because the complaint "contain[ed] no allegations that any individual or entity other than Plaintiff was the victim of Defendant's allegedly fraudulent scheme"). Accordingly, the Court strikes the demand for punitive damages.

### H. Hype Music Production

Lastly, Defendants contend that Plaintiffs' claims against Hype must be dismissed because it is not a legal entity capable of being sued. Although Plaintiffs alleged that Hype is a

partnership formed by Viacom and Extreme based in New York, *see* FAC ¶ 19, Defendants contend that there is no such partnership registered in New York and that Hype is nothing more than the name of a music library. Plaintiffs do not object to dismissing the claims against Hype so long as Defendants do not later change their position and claim that Hype is the entity responsible for any adverse judgment. Accordingly, all claims against Hype are dismissed.

## **CONCLUSION**

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendants' motions. The Court partially dismisses Plaintiffs' two claims for breach of contract to the extent they seek damages for licensing fees earned before July 1, 2014; dismisses Plaintiffs' claims for fraud, breach of implied-in-fact contract, rescission, and accounting; strikes Plaintiffs' demands for punitive damages and disgorgement of profits; and dismisses all claims against Hype. In their breach-of-contract claims, Plaintiffs may argue a breach of the duty of good faith and fair dealing, and they may seek damages stemming from licensing fees earned on or after July 1, 2014, and damages stemming from public performance royalties without limitation.

Dated: New York, New York
      January 9, 2017

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge